# UNITED STATES DISTRICT COURT
## FOR PUERTO RICO

COMMONWEALTH OF PUERTO
RICO and COMMONWEALTH OF
PUERTO RICO through the
ENVIRONMENTAL QUALITY
BOARD,

       Plaintiff,

v.

SHELL OIL COMPANY;
SOL PUERTO RICO LTD. (f/k/a SHELL
COMPANY PUERTO RICO LTD.);
SHELL CHEMICAL YABUCOA, INC.;
SHELL TRADING (US) COMPANY;
MOTIVA ENTREPRISES, LLC;
EQUILON ENTERPRISES, LLC;
ENI USA R&M CO., INC. (f/k/a AMERICAN
AGIP COMPANY INC.;
BUCKEYE CARIBBEAN TERMINALS LLC;
CHEVRON CORPORATION;
CHEVRON, U.S.A., INC.;
PC PUERTO RICO, INC. (f/k/a CHEVRON
PUERTO RICO, LLC);
TEXACO PUERTO RICO, INC.;
TEXACO INTERNATIONAL TRADER, INC.;
CHEVRON PHILLIPS;
CHEMICAL PUERTO RICO CORE, INC.;
TEXACO PETROLEUM, INC.;
CHEVRON INTERNATIONAL
OIL COMPANY, INC.;
TEXACO REFINING AND
MARKETING, INC.;
CHEVRON CARIBBEAN, INC.;
CHEVRON ESTRELLA PUERTO RICO, INC.;
CHEVRON TEXACO GLOBAL TRADING;
COLONIAL GROUP INC.;
COLONIAL OIL INDUSTRIES, INC.;
COLONIAL CARIBBEAN INC.;
ESSO STANDARD OIL COMPANY
(PUERTO RICO);
EXXON CARIBBEAN SALES INC.;

**COMPLAINT**

Civil Action

**JURY TRIAL DEMANDED**

RECEIVED AND FILED

U.S. DISTRICT COURT
SAN JUAN, PR.

2013 SEP -4  PM 5: 32

EXXON COMPANY USA;                          )
EXXON MOBIL SALES AND SUPPLY LLC;   )
EXXONMOBIL CORPORATION;                )
EXXONMOBIL REFINING & SUPPLY          )
CORP.                                       )
HESS CORPORATION;                       )
HESS ENERGY TRADING COMPANY, LLC;  )
HOVENSA L.L.C.;                         )
HESS OIL VIRGIN ISLANDS                 )
CORPORATION;                            )
SUNOCO, INC.;                           )
SUNOCO INC. (R&M);                      )
PUERTO RICO SUN OIL COMPANY, LLC;   )
CONOCOPHILLIPS COMPANY;                )
CITGO REFINING AND CHEMICAL           )
COMPANY, LP;                            )
CITGO INTERNATIONAL P.R.;              )
CITGO PETROLEUM CORPORATION;           )
CITGO INTERNATIONAL LATIN              )
AMERICA;                                )
TOTAL PETROLEUM PUERTO RICO            )
CORPORATION;                            )
ATLANTIC TRADING & MARKETING INC.; )
SHELL WESTERN SUPPLY AND TRADING,  )
LIMITED;                                )
SHELL INTERNATIONAL PETROLEUM         )
COMPANY, LIMITED;                       )
SHELL WESTERN SERVICES;                )
PEERLESS OIL AND CHEMICALS, INC.;      )
PUMA ENERGY CARIBE, LLC;               )
PUMA ENERGY PUERTO RICO, INC.;         )
PUMA ENERGY INTERNATIONAL, B.V.       )
TRAFIGURA A.G.;                         )
TRAFIGURA BEHEER, B.V.;                )
PETROBRAS AMERICA, INC.;               )
TAUBER OIL;                             )
TENOCO OIL COMPANY;                     )
TCP GROUP INC. (f/k/a TEXAS            )
PETROCHEMICAL COMPANY);                )
IDEMITSU APOLLO CORPORATION;           )
TRAMMO PETROLEUM, INC.;                )
TRAMMO CARIBBEAN, INC.;                )
VITOL, S.A.;                            )
VITOL, INC.;                            )
VITOL ENERGY (BERMUDA) LTD.;           )
LYONDELL CHEMICAL COMPANY;             )
and DOES 1-99;                          )
                                        )
                    Defendants.         )
_____ )

2

## COMPLAINT

COMES NOW Plaintiff, the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico through the Puerto Rico Environmental Quality Board (collectively referred to as "the Commonwealth" or "Plaintiff"), a sovereign entity that manages, controls, holds in trust, and owns the water resources within its boundaries on behalf of the public as trustee over the Commonwealth's water resources and quasi-sovereign interests, by and through its undersigned counsel, and brings this civil action against the above-named defendants (collectively hereinafter referred to as the "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court over this action is based upon 28 U.S.C. § 1331; 15 U.S.C. § 2619(a); and 42 U.S.C. § 6972(a).

2.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1395(a).

## SUMMARY OF THE CASE

4.    The potable waters of the Commonwealth, whether surface or ground waters, constitute limited, precious and invaluable public resources that are owned and held in trust for the citizens of the Commonwealth and for which the Commonwealth has the authority and responsibility to protect for present and future generations.  *See* 12 L.P.R.A. § 1115a.  The waters of the Commonwealth are of common property in the public domain for public use.  The waters of the Commonwealth constitute common things of public domain.  *See* 31 L.P.R.A. §§ 1023, 1024 & 1025.  The Commonwealth brings this suit to recover damages and to protect the citizens of the Commonwealth pursuant to its regulatory and *parens patriae* authority.

5.    For purposes of this Complaint, "waters of the Commonwealth" include all Class SG ground waters and all Class SD surface waters located on the main island. Class SG ground waters and Class SD surface waters are intended for use as sources of drinking water supply according to the Puerto Rico Water Quality Standards Regulation. "Waters of the Commonwealth" also include all source waters that could impact the quality of Class SG and/or Class SD waters.  For purposes of this Complaint, "waters of the Commonwealth" do not include non-potable waters, such as estuarine and coastal waters, or ground waters with elevated total dissolved solids concentrations (concentrations greater than 10,000 mg/l) unless such waters act as a source water for potable waters or are currently being treated or blended and used as a source of drinking water.  "Waters of the Commonwealth" do not include waters on the islands of Mona, Vieques, and Culebra nor do they include waters underlying federally owned property, such as army and navy bases.

6.      Methyl tertiary butyl ether has been detected at service stations throughout the Commonwealth.  Defendants have the most information on the location of sites where methyl tertiary butyl ether has been released.  The waters of the Commonwealth that have been affected by these releases include waters located directly beneath these release sites, and waters that are hydrogeologically connected to waters beneath the release sites. The classification of ground waters beneath sites where methyl tertiary butyl ether has been released is determined by the total dissolved solids content of the ground water. Defendants are aware of the groundwater characteristics at release sites because Defendants are required by law to investigate impacts to ground water at sites where releases have occurred, including potential impacts to wells used for drinking water.  To the extent there has been a release of methyl tertiary butyl ether to fresh surface waters, such waters are Class SD waters within the scope of this Complaint.

7.      In 2007, the Commonwealth brought an initial action in this Court concerning methyl tertiary butyl ether contamination of the Waters of the Commonwealth.  That case currently involves 341 release sites where MTBE has been detected in soils and/or groundwater as well as numerous receptor sites with detections of MTBE.  This new case, which is set forth in this Complaint being filed today, involves sites currently not included in the 2007 case.  The specific sites with MTBE detections included in this case include the sites listed on Appendix A, which is incorporated herein.

8.      A very high percentage of gasoline release sites where MTBE has been tested for have had MTBE present in the groundwater or soil at the sites.  Accordingly, the Commonwealth seeks an order requiring testing or damages to pay for testing of all potable wells and gasoline release sites in the Commonwealth for MTBE. To the extent contamination is identified, the Commonwealth seeks an injunction requiring restoration

of the waters of the Commonwealth or damages for the Commonwealth to provide such restoration.

9.      Defendants' use of methyl tertiary butyl ether and its natural degradation byproducts, including tertiary butyl alcohol (collectively referred to herein as "MTBE") in gasoline has created an unparalleled threat to the waters of the Commonwealth that are sources for public and private drinking water supplies. Unlike other gasoline constituents, MTBE has unique characteristics that cause extensive environmental contamination. MTBE contaminates and spreads in water resources quickly and is difficult to remove and treat, consequently presenting a grave threat to waters of the Commonwealth.  MTBE has already contaminated waters of the Commonwealth and threatens to contaminate many more, as a result of the normal and foreseeable storage, purchase and use of gasoline within the Commonwealth.

10.     MTBE can cause significant adverse health effects and, even at very low concentrations, can render drinking water unfit for human consumption due to the fact that MTBE has a very strong odor and taste.

11.     The Defendants in this action are all corporate members of the petroleum and chemical industries.  As described below, Defendants include refiners of gasoline containing MTBE; manufacturers and promoters of MTBE; suppliers of gasoline containing MTBE; and owners and operators of facilities that have released MTBE into the waters of the Commonwealth.

12.     In addition to producing and/or supplying MTBE or gasoline containing MTBE within the Commonwealth, Defendants knowingly and willfully promoted, marketed and sold MTBE and petroleum products containing MTBE, when they knew or reasonably should have known that MTBE would be released into the environment and pollute the waters of the Commonwealth, would interfere with the Commonwealth's

6

interest in protecting and preserving the waters of the Commonwealth, and would threaten public health and welfare and the environment, as has occurred and is continuing to occur within the Commonwealth.

13.    In addition to seeking damages to fund the identification and treatment of MTBE contaminated waters used for public and private drinking water, the Commonwealth also seeks the costs of restoring MTBE contaminated waters of the Commonwealth to their original pre-discharge condition, and compensation for injuries to the waters of the Commonwealth, including compensation for the lost use, lost value, and lost existence value of such waters.  The Commonwealth further seeks an order compelling the Defendants to investigate their contamination, to abate the public nuisance the Defendants have caused with respect to the waters of the Commonwealth, and to prevent further releases from their leaking underground storage tanks, among other relief.

## **PLAINTIFF**

14.    Plaintiff, the Government of the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico through the Environmental Quality Board, is a sovereign entity that manages, controls, holds in trust, and owns the water resources within its boundaries.  It owns and holds such resources in trust for the benefit of all of its citizens. The Commonwealth brings this action as a trustee and owner of the waters of the Commonwealth and pursuant to its police powers, which include, but are not limited to, the power to prevent pollution of the waters of the Commonwealth, prevent public nuisances, and to prevent potential hazards to the public health, welfare, and environment.

15.    Plaintiff has standing to sue because it has a property interest in the waters of the Commonwealth as well as a quasi-sovereign interest in protecting such waters from contamination.   The contamination of the waters of the Commonwealth by MTBE

constitutes an injury to the waters of the Commonwealth, property owned by the Commonwealth and held in public trust by the Commonwealth for the People of Puerto Rico.   The Commonwealth seeks damages in its *parens patriae* capacity for the contamination of such waters.

16.   It is the public policy of the Commonwealth to maintain the purity of the waters of the Commonwealth required for the welfare, safety, and development of the Commonwealth and to insure and protect the water supply that may be needed by present and future generations.   To achieve this purpose, the laws of the Commonwealth have deemed all waters and bodies of water of Puerto Rico, including the waters of the Commonwealth, as defined herein in Paragraph 5 above, to be the property and wealth of the People of Puerto Rico.   *See* 12 L.P.R.A. §§ 1115a, 1115c.   It is the duty of the Commonwealth Government to administer and protect this patrimony in the name and on behalf of the Puerto Rican people. The waters of the Commonwealth are common property in the public domain for public use and are not subject to commerce by citizens of the Commonwealth.   The waters of the Commonwealth constitute common things of public domain.   *See* 31 L.P.R.A. §§ 1023, 1024 & 1025.   Prescription ("prescripción") does not run on claims by the Commonwealth over public property and things of a public nature such as the waters of the Commonwealth.   *See* 31 L.P.R.A. § 5247.

17.   The Commonwealth, through the Environmental Quality Board, has standing to enforce the Commonwealth's environmental regulations and statutes through The Public Policy Environmental Act, Title II, Act No. 9, 12 L.P.R.A. §8001 *et seq.*

18.   The Secretary of Justice may, when in his judgment the interests of the Commonwealth require it, institute and conduct proceedings against persons who intrude on the lands, rights, or property of the Commonwealth, or commit or erect any nuisance thereon.

**DEFENDANTS**

19.     The Defendants in this action are all corporate members of the petroleum industry.  As described below, Defendants include refiners of gasoline containing MTBE that contaminates waters of the Commonwealth; manufacturers and promoters of MTBE; suppliers of gasoline containing MTBE that contaminates waters of the Commonwealth; and owners and/or operators of gasoline facilities that have released MTBE that contaminates waters of the Commonwealth.

20.     Any and all references to Defendant, Defendants, or a particular Defendant by name in this Complaint include all predecessors, successors, parents, subsidiaries, affiliates, divisions, and agents of the named Defendants.

21.     When the term "Defendants" is used alone, it refers to all Defendants named herein jointly and severally.

22.     When reference in this complaint is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

23.     Upon information and belief, parent corporations named herein exercised pervasive and excessive control over their subsidiary entities named herein such that the parent corporations controlled the subsidiary businesses as a whole and thereby conducted business in Puerto Rico.  Moreover, upon information and belief, the subsidiary corporations named herein have acted as agents of their parent corporations in conducting business in the Commonwealth or selling products for use and distribution within the Commonwealth.

24.     The Defendants, among other things:

(a)      designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE or neat MTBE that was refined in or delivered into the Commonwealth, such that discharges of MTBE contaminate and threaten the waters of the Commonwealth;

(b)      were legally responsible for and committed each of the multiple tortious and wrongful acts alleged in this Complaint;

(c)      participated in one or more enterprises to promote MTBE and/or gasoline containing MTBE, despite the availability of reasonable alternatives and their actual or constructive knowledge that the pollution alleged herein would be the inevitable result of their conduct; and

(d)      in doing the tortious and wrongful acts alleged in this Complaint, acted in the capacity of joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the named Defendants.

## A.      Refiner/Supplier Defendants

25.     Upon information and belief, the following Defendants, at all times relevant to this action, refined, marketed and/or otherwise supplied (directly or indirectly) gasoline and/or other products containing MTBE that each such Defendant knew or should have known would be delivered into the Commonwealth.   The following Defendants and Does 1 through 99 are collectively referred to as the "Refiner/Supplier Defendants."

26.     Eni USA R&M Co., Inc. (f/k/a American Agip Company Inc.) is a Delaware corporation with its principal place of business at 485 Madison Avenue, New York, New York.

27.     Buckeye Caribbean Terminals LLC is a Puerto Rico limited liability company with its principal place of business at Road 901 Km 2.7, Bo. Camino Nuevo, Yabucoa, Puerto Rico.

28.     Chevron Corporation ("Chevron Corp.") is a Delaware corporation with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California. Defendant Chevron Corp. is the successor-in-interest to ChevronTexaco Corporation and successor-in-interest to Texaco, Inc.  Upon information and belief, the Commonwealth further alleges that Chevron Corp. owns and/or controls defendant Chevron U.S.A., Inc.

29.     Chevron Puerto Rico LLC ("Chevron PR") is an affiliate of Chevron Global Energy, Inc., which is also known as Chevron Texaco Products Company, a Delaware limited liability company, with its principal place of business at 6001 Bollinger Canyon Rd., Room 5378, San Ramon, CA.  Chevron PR's principal place of business is located at the Texaco Plaza Building, Suite 400, Metro Office Park, Guaynabo, Puerto Rico.  Upon information and belief, the Commonwealth alleges that Chevron PR was formerly known as Texaco Puerto Rico LLC, which was formerly known as Texas Company (Puerto Rico) Inc.

30.     Texaco Puerto Rico, Inc. ("Texaco PR") is a Puerto Rico corporation with its principal place of business located at Texaco Plaza Metro Office Park, Street 1 #2, 4th Floor, Suite 400, Guaynabo, Puerto Rico.

31.     Texaco International Trader, Inc. is a Delaware corporation with its principal place of business in White Plains, New York and Houston, Texas.

32.     Chevron Phillips Chemical Puerto Rico Core, Inc. ("Chevron Phillips"), upon information and belief formally known as Phillips Puerto Rico Core Inc., is a Delaware corporation with its principal place of business in Puerto Rico located at Carr 710 KM 1.3, Guayama, Puerto Rico.  Chevron Phillips is a subsidiary of Chevron Phillips Chemical LLC.

33.      Texaco Petroleum, Inc. ("Texaco Petroleum") is a Delaware Corporation with its principal place of business in Puerto Rico at Street 1, #2 Metro Office Park, Guayanabo, Puerto Rico.

34.     Chevron International Oil Company, Inc. ("Chevron International") is a Delaware corporation with its principal place of business in Puerto Rico at Almacenes Del Castillo, Zona Libre, San Juan, Puerto Rico.

35.     Chevron U.S.A., Inc. ("Chevron U.S.A.") is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Road, San Ramon, California. Chevron U.S.A. acquired Gulf Oil Corporation ("Gulf Oil") through merger in 1984 and is the successor in interest to Gulf Oil.

36.     The term "Chevron" as used in this Complaint refers to Chevron Corp. and Chevron U.S.A.

37.     Texaco Refining and Marketing, Inc. ("Texaco") is a Delaware corporation with its principal place of business in Houston, Texas.

38.     ChevronTexaco Global Trading is a corporation with its principal place of business in Houston, Texas.

39.     CITGO Refining and Chemical Company, LP ("CITGO Refining"), a subsidiary of CITGO Investment Company, is an Oklahoma limited partnership with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

40.     CITGO International P.R. ("CITGO International"), also known as CITGO Puerto Rico Petroleum Corporation is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

41.     CITGO Petroleum Corporation ("CITGO Petroleum") is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

42.     Citgo International Latin America is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma.

43.     The term "CITGO" as used in this Complaint refers to CITGO Petroleum and/or CITGO Refining.

44.     Colonial Group, Inc. is a Delaware corporation with its principal place of business at 101 North Lathrop Avenue, Savannah, Georgia.

45.     Colonial Oil Industries, Inc. is a Georgia corporation with its principal place of business at 101 North Lathrop Avenue, Savannah, Georgia

46.     Colonial Caribbean, Inc. is a Delaware corporation with its principal place of business at Three Riverway, Suite 2000, Houston, Texas as well as in Guayanilla, Puerto Rico.

47.     ConocoPhillips Company ("ConocoPhillips") is a Delaware corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas. On information and belief, the Commonwealth alleges that ConocoPhillips was formed as the result of a merger in 2002 of Conoco, Inc. and Phillips Petroleum Company. On information and belief, the Commonwealth further alleges that ConocoPhillips is the successor corporation to Conoco, Inc. and Phillips Petroleum Company. The Commonwealth is further informed and believes that ConocoPhillips is the successor corporation to Tosco Corporation, including its subsidiary Tosco Refining LP, which was acquired by Phillips Petroleum Company in 2001.

48.     Esso Standard Oil Company (Puerto Rico) ("ESSORICO") is a Commonwealth of Puerto Rico corporation with its principal place of business at San Patricio Avenue, Parkside Corner #1, Guaynabo, Puerto Rico.  ESSORICO is wholly owned by defendant ExxonMobil Corporation.

49.     Exxon Caribbean Sales Inc. ("Esso Caribbean")_is a Delaware corporation with principal place of business at 396 Alhambra Circle, Coral Gables, Florida.

50.     ExxonMobil Sales & Supply LLC is a Delaware corporation with its principal place of business at 3225 Gallows Road, Fairfax, Virginia.

51.     ExxonMobil Corporation ("ExxonMobil Corp.") is a New Jersey corporation with its principal place of business at 5959 Las Colinas Boulevard, Irving, Texas. Defendant ExxonMobil was formed as a result of a merger in 1999 of Mobil Oil Corporation and Exxon Corporation.

52.     Exxon Company USA is a corporation with its principal place of business in Irving, Texas.

53.     Exxon Mobil Refining & Supply Corp. is a corporation with its principal place of business in Houston, Texas.

54.     Hess Corporation ("Hess") is a Delaware corporation with its principal place of business at 1185 Avenue of the Americas, New York, New York.

55.     Hess Energy Trading Company, LLC is a Delaware limited liability company with its principal place of business at 1185 Avenue of the Americas, New York, New York.

56.     HOVENSA L.L.C. ("HOVENSA") is a limited liability company organized and existing under the laws of the United States Virgin Islands with its principal place of business located at 1 Estate Hope, Christiansted, St. Croix, United States Virgin Islands.

57.     Hess Oil Virgin Islands Corporation ("HOVIC"), a wholly-owned subsidiary of Hess Corporation, is a corporation organized and existing under the laws of the United States Virgin Islands with its principal place of business located at 1185 Avenue of the Americas, New York, NY.  Defendants HOVENSA and HOVIC are collectively referred to in this Complaint as "Hess."

58.     Shell Oil Company ("Shell Oil") is a Delaware corporation with its principal place of business at One Shell Plaza, 910 Louisiana Street, Houston, Texas.

59.     Sol Puerto Rico Ltd. (f/k/a Shell Company Puerto Rico Ltd. ("SOL PR") is a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico.

60.     Shell Chemical Yabucoa, Inc. ("Shell Chemical Yabucoa") is a Puerto Rico corporation with its principal place of business located at Road 901, KM 2.7, Yabucoa, Puerto Rico.

61.     Shell Trading (US) Company ("Shell Trading") is a Delaware corporation with its principal place of business in Houston, Texas and its principal place of business in Puerto Rico at 361 San Francisco Street, Penthouse, Old San Juan, Puerto Rico.

62.     Motiva Enterprises, LLC ("Motiva") is a Delaware limited liability company with its principal place of business at 1100 Louisiana Street, Suite 1000, Houston, Texas.  Upon information and belief, the Commonwealth alleges that Motiva is a successor in interest to certain entities related to defendant Shell Oil Company and defendant Texaco Refining and Marketing, Inc., and is owned and/or controlled by Defendant Shell Oil.  Upon information and belief, the Commonwealth alleges that Motiva was formerly known as Star Enterprises LLC.

63.     Equilon Enterprises, LLC ("Equilon"), d/b/a Shell Oil Products US, is a Delaware limited liability company with its principal place of business at 1100 Louisiana Street, Suite 2200, Houston, Texas.

64.     The term "Shell" as used herein refers to Shell Oil and Motiva.

65.     Sunoco, Inc., formerly known as Sun Oil Company and Sun Company, Inc., is a Pennsylvania corporation with its principal place of business at 1801 Market Street, 27th Floor, Philadelphia, Pennsylvania.

66.     Sunoco, Inc. (R&M), formerly known as Sun Refining and Marketing Company and Sun Company Inc. (R&M), is a Pennsylvania corporation with its principal place of business at 1801 Market Street, 27th Floor, Philadelphia, Pennsylvania.

67.     Puerto Rico Sun Oil Company LLC is a Delaware corporation with its principal place of business located at Road 901, KM 2.7, Yabucoa, Puerto Rico.

68.     The term "Sunoco" as used herein refers to Sunoco Inc. and Sunoco Inc. (R&M).

69.     Total Petroleum Puerto Rico Corporation ("Total PR"), successor to Gasolinas de Puerto Rico Corporation, is a Puerto Rico corporation with its principal place of business at Mario Julia Industrial Park, A Street, Suite 11A, Guaynabo, Puerto Rico.  Upon information and belief, the Commonwealth alleges that Total PR is a wholly owned subsidiary of Total Outre Mer, S.A. of France.

70.     Atlantic Trading & Marketing, Inc. is a Texas corporation with its principal place of business at San Felipe Plaza, Suite 2100, Houston, Texas.

71.     Shell Western Supply and Trading Limited, ("SWS&TL") is a business organization, similar to a U.S. corporation, with a principal place of business at Mahogany Court, Wildey Business Park, Wildey, Barbados.

72.     Shell International Petroleum Company Limited ("Shell International") is a business organization of unknown form with a principal place of business at Shell Centre SE1 7NA, London, United Kingdom.

73.     Shell Western Services is a business organization similar to a U.S. corporation with a principal place of business in Nassau, Bahamas.

17

74.    Peerless Oil and Chemicals, Inc. ("Peerless") is a Delaware corporation headquartered in Puerto Rico with a principal place of business at Road 127 KM 17.1, Punta Guayanilla, Penuelas, Puerto Rico 00624.

75.    Puma Energy Caribe, LLC ("Puma Energy Caribe") is a Puerto Rico limited liability company with a principal place of business at Centro International de Mercadeo, Torre I #100, Carr 165, Suite 408 in Guaynabo, Puerto Rico 00968.

76.    Puma Energy Puerto Rico, Inc. ("Puma Energy PR") is a Puerto Rico corporation with its principal place of business at Carr #28 KM 0.2, Zona Portuaria, Guaynabo, Puerto Rico 00966.

77.    Puma Energy International, B.V. ("Puma Energy International") is a business organization, similar to a U.S. limited liability company, with a principal place of business at 2 Qual de la Poste, 1204, Geneva, Switzerland.

78.    Trafigura A.G. is a business organization, similar to a U.S. corporation, with a principal place of business in Lucerne, Switzerland and with a business location at 1401 McKinney Avenue, Suite 2375, Houston, Texas 77010 and in Puerto Rico at 154 Calle Rafael, Suite 2375, San Juan, Puerto Rico.

79.    Trafigura Beheer B.V. is a business organization, similar to a U.S. limited liability company, with a principal place of business located at Gustav Mahlerplein 102 1082 MA Amsterdam, Netherlands.

80.    Petrobras America, Inc. ("Petrobras") is a Delaware corporation headquartered in Houston, Texas at 10350 Richmond Avenue, Suite 1400, Houston,

Texas 77042 and with a business location at 361 San Francisco Street, Penthouse, Old San Juan, Puerto Rico 00901.

81.    Tauber Oil is a Delaware corporation headquartered at 55 Waugh Drive, Suite 700 in Houston, Texas 77007.

82.    Tenoco Oil Company was previously incorporated in Puerto Rico with a principal place of business at Carr2 KM 118.7, Aguadilla 00603 in Puerto Rico.

83.    TCP Group Inc. (f/k/a Texas Petrochemical Company) is a Delaware corporation with its principal place of business at 5151 San Flipe, Suite 800, Houston, Texas.

84.    Idemitsu Apollo Corporation ("Idemitsu") is a New York corporation with a principal place of business at 1831 16th Street, Sacramento, California, 95811.

85.    Trammo Petroleum, Inc., ("Trammo Petroleum") is incorporated in Delaware with a principal place of business at 1111 Bagby Street, Suite 1920, Houston, Texas.

86.    Trammo Caribbean Inc.  ("Trammo Caribbean") is a Delaware corporation with a registered agent located at 2711 Centerville Road, Suite 400, Wilmington Delaware.

87.    Vitol, S.A. is a Swiss "société anonyme," similar to a U.S. corporation, with its principal place of business at Boulevard du Pont d'Arve 28, in Geneva, Switzerland.

88.    Vitol, Inc., is a Delaware corporation with a principal place of business at 1100 Louisiana, Suite 5500 in Houston, Texas.

19

89.     Vitol Energy (Bermuda) Ltd. is a corporation with its principal place of business at Sutherland Place, 10/12 Burnaby Street, Hamilton HM 11, Bermuda.

**B.     MTBE Manufacturer/Supplier Defendants**

90.     Upon information and belief, the following Defendants, at all times relevant to this action, manufactured and supplied MTBE and/or other products containing MTBE that each such Defendant knew or should have known would be delivered into the Commonwealth.  The following Defendants and Does 1 through 99 are collectively referred to as the "Manufacturer/Supplier Defendants."

91.     Lyondell Chemical Company, successor in interest to ARCO Chemical Company (collectively, "Lyondell"), is a Delaware corporation with its principal place of business at 1221 McKinney Street, Houston, Texas.

92.     In addition to Lyondell, Defendants including Chevron U.S.A., Chevron Phillips, CITGO, ConocoPhillips, ExxonMobil, Shell Oil, Sunoco, Inc. (R & M), Hess, HOVENSA, Texaco, and Does 1 through 99 manufactured MTBE for use in gasoline.

**C.     Owner/Operator Defendants**

93.     Upon information and belief, the following Defendants, at all times relevant to this action, owned and or operated gasoline service stations and/or underground storage tanks that have discharged gasoline containing MTBE.   The following Defendants and Does 1 through 99 are collectively referred to as the "Owner/Operator Defendants."

94.     Chevron Caribbean, Inc. ("Chevron Caribbean") is a Delaware corporation with its principal place of business at Texaco Plaza Building, Suite 400, Metro Office

Park, Guaynabo, Puerto Rico.  Upon information and belief, the Commonwealth alleges that Chevron Caribbean was formerly known as Texaco Caribbean, Inc.

95.     Chevron Estrella Puerto Rico, Inc. ("Chevron Estrella") is a Puerto Rico corporation, formerly known as Texaco Estrella Puerto Rico, inc., with its principal place of business at the Texaco Plaza Building, Suite 400, Metro Office Park, Guaynabo, Puerto Rico.

96.     Defendants  including  Chevron  U.S.A.,  Texaco  PR,  Chevron  Phillips, CITGO, ConocoPhillips,  Shell, SOL PR, Sunoco, ESSORICO, Total PR, and Does 1 through 99 are/were the owners of services stations and underground storage tanks and/or are the successors to the owners of service stations and underground storage tanks.

**D.     Does 1-99**

97.     "Does" 1 through 99 are corporations, partnerships, associations, natural persons or other entities that are not presently known to the Plaintiff, certain of which are corporate successors to, predecessors of, assigns of, or are otherwise related to other Defendants, and as well are manufacturers, refiners, blenders, distributors, suppliers, marketers, and retailers of MTBE and/or gasoline containing MTBE.  The true names and identities of Does 1 through 99 are not known to the Plaintiff, and therefore the Plaintiff sues said Defendants by fictitious names.

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

**The Contaminant – MTBE**

98.     Methyl tertiary butyl ether is an additive to gasoline.  As used herein, MTBE consists not only of methyl tertiary butyl ether, but also the contaminants in commercial grade MTBE.

99.     Tertiary butyl alcohol ("TBA") is present in some gasoline as an impurity in commercial grade MTBE and a degradation or breakdown product of MTBE.

100.    MTBE contaminates the environment through leaks and spills from gasoline delivery systems.  Once released to the environment, MTBE has unique characteristics that cause extensive environmental contamination and a corresponding threat to the public health and welfare.  In particular, the fate and transport of MTBE in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (benzene, toluene, ethylbenzene, and xylene).

101.    Once released into the subsurface, MTBE separates from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE has a strong affinity for water.  If MTBE is released into the environment in sufficient

quantities, MTBE has the capacity to migrate through the soil, the groundwater, penetrate deeper within the aquifer, and cause persistent contamination that can threaten the potability of drinking water wells.  There is a potentially lengthy delay, based on site specific factors, between the time MTBE is released and the time it and its degradation products accumulate in potentially usable ground water in sufficient quantities to contaminate public drinking water resources.

102.   MTBE spreads farther and faster than other components of gasoline, resists biodegradation, and it will be difficult and costly to remove from waters of the Commonwealth.

103.   No federal or Commonwealth agency has approved MTBE as an additive to drinking water.  No federal or Commonwealth agency has approved releasing MTBE to waters of the Commonwealth.

104.   Along with its other vile properties, MTBE can render the waters of the Commonwealth undrinkable by changing the taste and odor of such waters into a foul smelling liquid with a turpentine odor and chemical taste unfit for human consumption. Such changes to the waters of the Commonwealth violate the Puerto Rico Water Quality Standards.

105.   MTBE also presents a significant public health threat.   Because of MTBE's potential for causing cancer, it is currently classified by the U.S. Environmental Protection Agency ("EPA") as a "possible carcinogen" and an EPA draft risk assessment has recommended reclassifying MTBE as a "probable carcinogen."

106.   Because of MTBE's propensity to contaminate vast quantities of water, to date, at least 25 States and the Commonwealths have banned or enacted laws that have set a date certain banning the use of MTBE as an additive in gasoline.

**Defendants' Promotion of MTBE**

107.    The Refiner/Supplier and Manufacturer/Supplier Defendants, all of whom have promoted the use of gasoline containing MTBE for its purported octane enhancement and/or environmental benefits, knew or should have known of the grave harm and threat to the public health and welfare represented by the proliferating use of this compound, including (among other things): widespread pollution of waters of the Commonwealth with MTBE, drinking water supplies rendered unfit and unusable for consumption, public health threatened, and increased costs to public water suppliers and their customers.

108.    Despite knowing that MTBE pollution was inevitable unless adequate precautions were taken, and despite the availability of reasonable alternatives (including but not limited to adequate warnings), Defendants chose not to warn customers, retailers, regulators or public officials, including the Commonwealth.  As production and sales of these compounds and gasoline containing them increased, Defendants failed to take any reasonable, appropriate, and special precautions to store gasoline containing MTBE safely, or to prevent, detect and clean-up spills and leaks of gasoline containing this product.  Despite knowing the risk of harm posed by MTBE, Defendants also failed to warn purchasers, the public, regulators, and/or the Commonwealth that without such precautions more and more MTBE would be released into the environment and cause, among other significant adverse effects, long term contamination of waters of the Commonwealth and threats to public health and safety.

109.    The Refiner/Supplier Defendants further exacerbated the situation by continuing unreasonable and negligent acts, including providing gasoline containing MTBE to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent releases of MTBE to the subsurface, knowing that release

to the environment of this compound would be inevitable because a substantial percentage of those gasoline stations would store such gasoline without taking reasonable, appropriate or special precautions, including placing the gasoline in inadequate and leaking gasoline delivery systems, and failing to take reasonable, appropriate, or special measures to monitor, detect, and respond to releases of MTBE to soil and/or groundwater, and without taking reasonable, appropriate or special precautions to investigate, contain and clean up releases of these compounds.

110.    The Refiner/Supplier and Manufacturer/Supplier Defendants took affirmative actions that led to the contamination of the waters of the Commonwealth with MTBE, including but not limited to, making representations to downstream users of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that such products were environmentally sound and appropriate for widespread production, distribution, sale and use.   Indeed, Defendants represented that gasoline containing MTBE could be handled the same as ordinary gasoline, and required no special measures to protect against or respond to suspected releases to the subsurface.

111.    The manufacturers, refiners, and suppliers of MTBE and gasoline containing MTBE had a duty (which they breached) to test MTBE thoroughly to determine its environmental fate and transport characteristics, and potential human health impacts before they sold MTBE and/or gasoline containing MTBE, and had a further duty (which they also breached) to take precautions necessary to assure that gasoline containing MTBE was properly stored and to institute all necessary measures to contain and promptly abate the inevitable spills and leaks.   Nonetheless, the Defendants, and each of them, failed adequately to test, store, warn about, or control gasoline containing MTBE, and, among other things, failed to abate contamination caused by MTBE, including contamination in and pollution of the waters of the Commonwealth.

112.    The Refiner/Supplier and Manufacturer/Supplier Defendants, their agents and employees created, participated in, and/or facilitated the flow of MTBE and/or gasoline containing one or more such compounds into gasoline distribution, storage, and dispensing systems that they knew could not safely contain such products. The widespread problems of leaking gasoline delivery systems were well known to the Defendants prior to the introduction of MTBE.  At least as early as the mid-1960's, these Defendants knew, or reasonably should have known, that gasoline delivery systems suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into ground water.

113.    Before introducing MTBE into gasoline delivery systems, the Refiner/Supplier and Manufacturer/Supplier Defendants knew, or reasonably should have known, among other things, that MTBE released into the environment would mix easily with ground water, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, cause significant expenses to remove from public drinking water supplies, and otherwise threaten the public health and welfare. The Defendants knew, or they reasonably should have known, that the gasoline distribution and retail system in the Commonwealth contained leaking gasoline delivery systems.  They knew, or they reasonably should have known, that gasoline facilities, including those in the Commonwealth, commonly lacked adequate storage facilities for gasoline containing MTBE, and that the operators of these facilities were unaware of either the special hazards of MTBE or the steps necessary to eliminate or mitigate those hazards.

114.    At all times relevant to this action:

(a)     The Manufacturer/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided

26

MTBE to the Refiner/Supplier Defendants, and each of them, sold, exchanged, supplied, distributed, delivered and/or otherwise provided gasoline containing MTBE to retail gasoline stations and/or other gasoline delivery systems in the Commonwealth. Upon information and belief, the Commonwealth alleges that such sales, exchanges, supplies, distributions, deliveries and/or other provisions of gasoline containing MTBE to such facilities occurred over time, up to and including the present;

(b)     Gasoline containing MTBE was released to the subsurface from retail gasoline facilities owned and/or operated by the Owner/Operator Defendants, and each of them, and from other facilities at dispersed locations in the Commonwealth. Such releases of gasoline containing MTBE have occurred over time, have been discovered or have become discoverable at various times, and are still occurring, all in varying amounts at different locations, impacting waters of the Commonwealth; and

(c)     MTBE takes time to migrate from release points to locations within the subsurface at which they have an appreciable impact on groundwater resources. MTBE has over time migrated in the subsurface from dispersed release points at or near the surface at retail gasoline facilities in the Commonwealth, causing pollution, contamination, and substantial damage to the waters of the Commonwealth, causing appreciable injury to the Commonwealth.

## COUNT I
### (Strict Products Liability for Defective Design and
### Failure to Warn Against All Defendants)

115.     The Commonwealth re-alleges paragraphs 1 through 114 above, and by this reference incorporates them as though set forth in full.

116.     The Refiner/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold gasoline containing MTBE.

117.     The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, designed, formulated, manufactured, compounded, refined, provided product information and/or instructions for use, packaged, labeled, promoted, marketed, distributed, transported, exchanged and/or sold MTBE, which was intended by said Defendants, and each of them, to be used as a gasoline additive.

118.     The Owner/Operator Defendants took delivery of, stored and sold the gasoline containing MTBE which is contaminating and polluting waters of the Commonwealth.

119.     The Refiner/Supplier and Manufacturer/Supplier Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing these compounds, and/or that gasoline containing MTBE did not require any different or special handling or precautions.

120.     Defendants, and each of them, knew that said product(s) were to be purchased and used without inspection for defects.

121.     MTBE and gasoline containing MTBE are defective products because, among other things:

28

(a)     The design and manufacture of these products was defective;

(b)     The benefits of using MTBE in gasoline, if any, are greatly outweighed by the associated costs and negative impacts imposed on society, consumers, and the environment, and on waters of the Commonwealth;

(c)     They cause extensive groundwater contamination by MTBE even when used in their foreseeable and intended manner;

(d)     Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public;

(e)     MTBE poses significant threats to the public health and welfare;

(f)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or gasoline containing MTBE, including but not limited to contamination of waters of the Commonwealth with MTBE;

(g)     The Refiner/Supplier and Manufacturer/Supplier Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE; and

(h)     Commercial grade MTBE is defectively manufactured when it contains unnecessary but environmentally harmful impurities such as TBA.

122.    MTBE and/or gasoline containing MTBE were used as intended to be used and in a foreseeable manner, and as a proximate result of the defects previously described, MTBE directly and proximately caused the Commonwealth to sustain the injuries and damages set forth in this Complaint.

123.    As a direct and proximate result of the acts and omissions of the Refiner/Supplier and Manufacturer/Supplier Defendants alleged herein, the

Commonwealth will have to assess, evaluate, investigate, monitor, abate, clean-up, correct, contain, and remove MTBE from waters of the Commonwealth, all at significant expense, loss, and damage.  In particular, the Commonwealth must investigate MTBE releases from all underground gasoline storage tanks within its territory, including those that have never been reported to regulators as known or suspected sources of releases.

124.    As a further direct and proximate result of the acts and omissions of the Refiner/Supplier and Manufacturer Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain damages and substantially increased expenses.  The Commonwealth has incurred and will continue to incur costs and attorneys' fees in prosecuting this action.  The Commonwealth is entitled to recover all such damages, together with court costs and reasonable attorneys' fees, in this action.

125.    Defendants CITGO, Chevron, ConocoPhillips, ExxonMobil, Lyondell, Shell, Sunoco, and Texaco knew that it was substantially certain that their alleged acts and omissions described above would threaten public health and cause extensive contamination of common water supplies, public drinking water supplies, and property damage.  These Defendants committed each of the above described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with conscious disregard of the health and safety of others, and of Plaintiff's rights.

126.    Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property.  Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth.

127.    The Defendants' failure to investigate and remediate contamination from the waters of the Commonwealth as required by the release response and corrective action

sections (Part VI) of the Puerto Rico Underground Storage Tank Control regulations and clarifying Commonwealth guidance that addresses MTBE constitutes continuing wrongful and illegal conduct.  Moreover, Defendants' discharges of MTBE into waters of the Commonwealth continue to violate §§ 1303.1 and 1303.2 of EQB Regulation 7837, which provides that the taste and odor of Class SG waters shall not be altered except by natural means, and taste and odor producing substances shall not be present in Class SD waters in amounts that may interfere with their use for potable water supply.  The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled due to Defendants' discharges violates this requirement.  In addition, the presence of MTBE at certain concentrations also violates the prohibition on the presence of toxic substances at concentrations that produce undesirable effects in humans either alone or as a result of synergistic effects with other substances.  The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled and/or cause toxic effects due to Defendants' discharges violate these requirements.   Accordingly, Defendants continuously violate these requirements so long as MTBE remains in the waters of the Commonwealth in excess of the odor or taste threshold for MTBE or toxicity threshold and until such MTBE is removed from such waters to be below such thresholds.

## COUNT II
### (Public Nuisance - 32 L.P.R.A. § 2761 Against All Defendants)

128.    The Commonwealth re-alleges paragraphs 1 through 127 above, and by this reference incorporates them as though set forth in full.

129.    The negligent, reckless, intentional and ultrahazardous activity of Defendants, and each of them, alleged herein has resulted in the contamination and pollution of the waters of the Commonwealth as alleged herein, and constitutes a public

nuisance.   32 L.P.R.A. § 2761.   The Secretary of Justice is authorized to institute proceedings against those parties that intrude on the lands, rights, or property of the Commonwealth, or commit a nuisance thereon.  3 L.P.R.A. § 73.

130.   The public nuisance caused, contributed to, maintained, and/or participated in by Defendants, and each of them, has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Commonwealth's significant property and quasi-sovereign interests in the waters of the Commonwealth, the Commonwealth's ability to protect, conserve and manage the waters of the Commonwealth, which are by law precious and invaluable public resources held by the Commonwealth in trust for the benefit of the public, as well as the rights of the people of the Commonwealth to enjoy a water supply free from unacceptable health risk, taste, odor, pollution, and contamination.

131.   Each Defendant has, at all times relevant to this action, caused, maintained, participated in and/or assisted in the creation of such public nuisance. Among other things, each Defendant is a substantial contributor to such public nuisance as follows:

   a. The Manufacturer/Supplier Defendants manufactured, promoted and supplied MTBE to refiners when they knew, or reasonably should have known, that: (i) the refiners would in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (iii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iv) when released into the subsurface, MTBE would spread farther and faster than

other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

b.  The Refiner/Supplier Defendants, and each of them, refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth, when they knew, or reasonably should have known, that: (i) such gasoline would be placed into leaking gasoline delivery systems; (ii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

c.  Defendants CITGO, Chevron, ConocoPhillips, ExxonMobil, Shell, Sunoco, and Texaco had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to ground water. These Defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the Commonwealth.

d.  Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew, or reasonably should have known, that MTBE would: (i) be released into the environment from

commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

e.  Despite their knowledge that contamination of the waters of the Commonwealth with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

f.  Defendants CITGO, Chevron, ConocoPhillips, Lyondell, ExxonMobil, Shell, Sunoco, and Texaco engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including the Commonwealth, and the public regarding the hazards of MTBE.

132.  The public nuisance caused, contributed to, maintained, and/or participated in by Defendants, and each of them, has caused and/or threatens to cause substantial injury to the waters of the Commonwealth, in which the Commonwealth has significant property rights and quasi-sovereign interests.

133.  The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased. MTBE continues to threaten, migrate into and enter the waters of the Commonwealth from leaking underground storage tanks.  The nuisance caused by Refiner/Supplier Defendants' sales of gasoline containing MTBE in or into the Commonwealth, which has resulted in leaks of MTBE from underground storage tanks within the Commonwealth that have gone unabated,

substantially contributed to the continuing unabated nuisance.   The Owner/Operator Defendants have maintained an unabated nuisance by failing to abate the nuisance through the removal of the MTBE in the groundwater at and migrating from sites they have owned and/or operated.   The Defendants' failure to investigate and remediate contamination from the waters of the Commonwealth as required by the release response and corrective action sections (Part VI) of the Puerto Rico Underground Storage Tank Control regulations and clarifying Commonwealth guidance that addresses MTBE constitutes continuing wrongful and illegal conduct.   Moreover, Defendants' discharges of MTBE into waters of the Commonwealth continue to violate §§ 1303.1 and 1303.2 of EQB Regulation 7837, which provides that the taste and odor of Class SG waters shall not be altered except by natural means, and taste and odor producing substances shall not be present in Class SD waters in amounts that may interfere with their use for potable water supply.   In addition, the presence of MTBE at certain concentrations also violates the prohibition on the presence of toxic substances at concentrations that produce undesirable effects in humans either alone or as a result of synergistic effects with other substances.   The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled and/or cause toxic effects due to Defendants' discharges violates these requirements.   Accordingly, Defendants continuously violate these requirements so long as MTBE remains in the waters of the Commonwealth in excess of the odor or taste threshold for MTBE or toxicity threshold and until such MTBE is removed from such waters to be below such thresholds.   Until the nuisance is abated and the waters of the Commonwealth are returned to their pre-injury quality, the Defendants are liable for the creation and continued maintenance of a public nuisance in contravention of the public's right to clean water and an unspoiled environment.

134. As a direct and proximate result of Defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which Defendants are jointly and severally liable.

135. As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which Defendants are jointly and severally liable.

136. The injuries to the waters of the Commonwealth caused and/or threatened by Defendants' acts and omissions as alleged herein are indivisible.

137. Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property. Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth.

## COUNT III
### (Trespass - 31 L.P.R.A § 5141 Against All Defendants)

138. The Commonwealth re-alleges paragraphs 1 through 137 above, and by this reference incorporates them as though set forth in full.

139. The Commonwealth is the owner and/or actual possessor of property rights and interests in the waters of the Commonwealth, as alleged herein, which the Commonwealth also holds in trust for the benefit of the public.

140. Defendants, and each of them, intentionally manufactured, refined, marketed, and/or otherwise supplied MTBE and/or gasoline containing MTBE with the knowledge that contamination of the waters of the Commonwealth with MTBE was substantially certain to result.

141. Among other things, Defendants, and each of them, intentionally caused MTBE to enter, invade, intrude upon and injure the waters of the Commonwealth as follows:

a. The Manufacturer/Supplier Defendants manufactured, promoted and supplied MTBE to refiners when they knew that it was substantially certain that: (i) the refiners would in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (iii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (iv) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

b. The Refiner/Supplier Defendants, and each of them, refined, marketed and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth, when they knew that it was substantially certain that: (i) such gasoline would be placed into leaking gasoline delivery systems; (ii) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and

(iii) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

c.   Defendants CITGO, Chevron, ConocoPhillips, ExxonMobil, Shell, Sunoco, and Texaco had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to ground water from those delivery systems. These defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the Commonwealth.

d.   Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew that it was substantially certain that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

e.   Despite their knowledge that groundwater contamination with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

f.   Defendants CITGO, Chevron, ConocoPhillips, ExxonMobil, Lyondell, Shell, Sunoco, and Texaco engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including the Commonwealth, and the public regarding the hazards of MTBE.

142.   Each of these Defendants' intentional acts and omissions has caused a trespass upon and contaminated the property, namely the waters, of the Commonwealth causing the Commonwealth damages for which Defendants are liable pursuant to 31 L.P.R.A § 5141.

143.   The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the Commonwealth.  Defendants continue to refrain from taking responsibility for this trespass and from taking action to remediate existing contamination and prevent future contamination of the Commonwealth's waters.

144.   The Commonwealth has not consented to and does not consent to the trespass alleged herein. Defendants, and each of them, knew or reasonably should have known, that the Commonwealth would not consent to this trespass.

145.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which Defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

146.    As a further direct and proximate result of the acts and omissions of the defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which Defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

147.    The injuries to the waters of the Commonwealth caused and/or threatened by defendants' acts and omissions as alleged herein are indivisible.

148.    Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property.  Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth.

149.    The Defendants' failure to investigate and remediate contamination from the waters of the Commonwealth as required by the release response and corrective action sections (Part VI) of the Puerto Rico Underground Storage Tank Control regulations and clarifying Commonwealth guidance that addresses MTBE constitutes continuing wrongful and illegal conduct.  Moreover, Defendants' discharges of MTBE into waters of the Commonwealth continue to violate §§ 1303.1 and 1303.2 of EQB Regulation 7837, which provides that the taste and odor of Class SG waters shall not be altered except by natural means, and taste and odor producing substances shall not be present in Class SD waters in amounts that may interfere with their use for potable water supply.  The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled due to Defendants' discharges violates this requirement.  In addition, the presence of MTBE at certain concentrations also violates the prohibition on the presence of toxic substances at concentrations that produce undesirable effects in humans either alone or as a result of synergistic effects with other substances.  The presence of MTBE in

such waters in excess of concentrations that can be tasted or smelled and/or cause toxic effects due to Defendants' discharges violates these requirements.    Accordingly, Defendants continuously violate these requirements so long as MTBE remains in the waters of the Commonwealth in excess of the odor or taste threshold for MTBE or toxicity threshold and until such MTBE is removed from such waters to be below such thresholds.

## COUNT IV
### (Negligence - 31 L.P.R.A § 5141 Against All Defendants)

150.    The Commonwealth re-alleges paragraphs 1 through 149 above, and by this reference incorporates them as though set forth in full.

151.    Defendants had a duty to the Commonwealth to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

152.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise entrusted MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the waters of the Commonwealth, resulting in the damages alleged in this Complaint.

153.    Defendants, and each of them, failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute waters of the Commonwealth, render drinking water unusable and unsafe, and threaten public health and welfare and the environment.

41

154.    The    Manufacturer/Supplier    Defendants,    among    other    things, manufactured, promoted and/or otherwise supplied MTBE to refiners when they knew, or reasonably should have known, that: (a) the refiners would in turn blend the MTBE into gasoline; (b) such gasoline containing MTBE would then be placed into leaking gasoline delivery systems, including those in the Commonwealth; (c) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (d) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to find and remove from the water.

155.    The Refiner/Supplier Defendants, and each of them, among other things, refined, marketed, and/or otherwise supplied gasoline containing MTBE that was delivered into the Commonwealth and/or in areas affecting waters of the Commonwealth, when they knew, or reasonably should have known, that: (a) such gasoline would be placed into leaking gasoline delivery systems; (b) MTBE would be released even more readily than the constituents of conventional gasoline from gasoline delivery systems; and (c) when released into the subsurface, MTBE would spread farther and faster than other components of gasoline, resist biodegradation, contaminate ground water, including drinking water supplies, and, ultimately, be difficult and costly to remove from the water.

156.    Defendants CITGO, Chevron, ConocoPhillips, ExxonMobil, Hess, Lyondell, Shell, Sunoco, and Texaco also had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to ground water from such systems. These defendants obtained such first-hand knowledge and experience

because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems.

157.    Defendants, and each of them, manufactured, refined, marketed, promoted and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew, or reasonably should have known, that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the Commonwealth other than gasoline delivery systems; and (ii) contaminate the waters of the Commonwealth.

158.    Despite their knowledge that contamination of the waters of the Commonwealth with MTBE was the inevitable consequence of their conduct as alleged herein, Defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measures to prevent or mitigate such contamination.

159.    In light of the facts alleged herein, Defendants, and each of them, breached their duty to use due care in the design, manufacture, formulation, handling, control, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

160.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, the Commonwealth has incurred, is incurring, and will continue to incur, administrative, investigation, remediation, cleanup, restoration, removal, treatment and/or monitoring costs and expenses related to contamination of the waters of the Commonwealth with MTBE for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

161.    As a further direct and proximate result of the acts and omissions of the Defendants alleged in this Complaint, the Commonwealth has sustained and will continue to sustain other substantial expenses and damages for which defendants are jointly and severally liable pursuant to 31 L.P.R.A § 5141.

162.    The injuries to the waters of the Commonwealth caused and/or threatened by Defendants' acts and omissions as alleged herein are indivisible.

163.    The contamination of the waters of the Commonwealth with MTBE alleged herein has varied over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the Commonwealth.  Defendants continue to refrain from taking responsibility for this trespass and from taking action to remediate existing contamination and prevent future contamination of the waters of the Commonwealth. The Defendants' failure to investigate and remediate contamination from the waters of the Commonwealth as required by the release response and corrective action sections (Part VI) of the Puerto Rico Underground Storage Tank Control regulations and clarifying Commonwealth guidance that addresses MTBE constitutes continuing wrongful and illegal conduct.   Moreover, Defendants' discharges of MTBE into waters of the Commonwealth continue to violate §§ 1303.1 and 1303.2 of EQB Regulation 7837, which provides that the taste and odor of Class SG waters shall not be altered except by natural means, and taste and odor producing substances shall not be present in Class SD waters in amounts that may interfere with their use for potable water supply.   The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled due to Defendants' discharges violates this requirement.   In addition, the presence of MTBE at certain concentrations also violates the prohibition on the presence of toxic substances at concentrations that produce undesirable effects in humans either

44

alone or as a result of synergistic effects with other substances.  The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled and/or cause toxic effects due to Defendants' discharges violates these requirements.   Accordingly, Defendants continuously violate these requirements so long as MTBE remains in the waters of the Commonwealth in excess of the odor or taste threshold for MTBE or toxicity threshold and until such MTBE is removed from such waters to be below such thresholds.

164.    Defendants' conduct is reprehensible, despicable, and was performed to promote sales of MTBE and/or gasoline containing MTBE in conscious disregard of the known risks of injury to health and property.  Defendants acted with willful and conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon the Commonwealth.

**COUNT V**
**(Puerto Rico Environmental Public Policy Act, Water Pollution Control Act, and Underground Storage Tank Control Regulations Against All Defendants)**

165.    The Commonwealth re-alleges paragraphs 1 through 164 above, and by this reference incorporates them as though set forth in full.

166.    The Defendants are each "person[s]" as defined by 24 L.P.R.A. § 591(d).

167.    The activities of Defendants, and each of them, alleged herein has resulted in the "pollution" of "waters" of the Commonwealth as defined by 24 L.P.R.A. § 591(i) and § 591(e), respectively.  For purposes of this Complaint, "waters" only includes waters of the Commonwealth, as defined in Paragraph 5 above.

168.     The MTBE and petroleum discharged to waters of the Commonwealth by the Defendants are "other" types of pollution as that term is defined by 24 L.P.R.A § 591(h).

169.     The Defendants' activities, individually and collectively, have directly or indirectly, caused the discharge or permitted the discharge of MTBE into the waters of the Commonwealth polluting said waters in such manner as to place them out of the minimum standards of purity set forth in the Commonwealth's regulations promulgated pursuant to 24 L.P.R.A. § 599 in violation of 24 L.P.R.A. § 595 and 12 L.P.R.A. § 8002c(b)(7)(B)

170.     Each Defendant directly or indirectly, caused the discharge or permitted the discharge of MTBE into the waters of the Commonwealth and/or onto the land where MTBE has seeped or will ultimately seep into the waters of the Commonwealth, polluting said waters.

171.     Violations of 24 L.P.R.A. § 595 and the regulations promulgated under 24 L.P.R.A. § 599 constitute violations of The Environmental Public Policy Act, 12 L.P.R.A. §8001 *et seq.*  *See* 12 L.P.R.A. § 8002d(2).  The Commonwealth has standing to enforce the provisions of the Environmental Public Policy Act.

172.     The Defendants' unlawful discharges of MTBE into the waters of the Commonwealth caused damages to the environment and natural resources of the Commonwealth including but not limited to the ground waters, including Class SG ground waters, and Class SD surface waters, which are subject to very stringent criteria pursuant to the Puerto Rico Water Quality Standards set forth in EQB Regulation 7837,

which constitutes an EPA-approved Water Quality Standard pursuant to 40 C.F.R. § 131.21 under the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*

173.     Pursuant to §§ 1303.1 and 1303.2 of EQB Regulation 7837 the taste and odor of Class SG waters shall not be altered except by natural means, and taste and odor producing substances shall not be present in Class SD waters in amounts that may interfere with their use for potable water supply.   Any discharge of MTBE into such waters violates this requirement due to MTBE's putrid smell and foul taste.   Accordingly, Defendants have violated this requirement.   The presence of MTBE in such waters in excess of concentrations that can be tasted or smelled due to Defendants' discharges violates this requirement.   Accordingly, Defendants continuously violate this requirement so long as MTBE remains in the waters of the Commonwealth in excess of the odor or taste threshold for MTBE and until such MTBE is removed from such waters.

174.     The Defendants' unlawful releases of regulated substances, containing MTBE, from underground storage tank system[s] into the waters of the Commonwealth violate Rule 1102(A) and (B) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362.  The Defendants' failure to investigate and remediate contamination from the waters of the Commonwealth as required by the release response and corrective action sections (Part VI) of the Puerto Rico Underground Storage Tank Control regulations and clarifying Commonwealth guidance that addresses MTBE constitutes continuing wrongful and illegal conduct.

175.     Defendants' installation, operation, and/or closure of underground storage tank systems without taking all practicable measures to control releases or spills violate Rule 1102(D) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362.

176.    Plaintiff EQB is empowered to and does seek the total value of the damages caused to the environment and natural resources of the Commonwealth caused by the Defendants' unlawful discharges of MTBE. 12 L.P.R.A. § 8002c(a)(11) and § 8002j(b).

177.    Because the Defendants' activities, individually and collectively, have directly or indirectly, caused the discharge or permitted the discharge of MTBE into waters of the Commonwealth, the Defendants are liable for the total value of the damages caused to the waters of the Commonwealth including the reasonable cost to restore and rehabilitate the waters of the Commonwealth along with the reasonable assessment costs, fees, and expenses the Commonwealth has incurred and will incur to assess, mitigate, restore, or replace any waters of the Commonwealth damaged or destroyed by the discharge of MTBE. 12 L.P.R.A § 8002c(a)(1) & (11) and § 8002j(b).

## COUNT VI
### (Resource Conservation and Recovery Act ("RCRA") Against All Defendants with Regulated Facilities Located Within the Commonwealth)

178.    The Commonwealth re-alleges paragraphs 1 through 177 above, and by this reference incorporates them as though set forth in full.

179.    On January 30, 1998, EPA issued its Final Approval of Puerto Rico's Underground Storage Tank Program under Subtitle I of the Resource Conservation and Recovery Act of 1976, as amended ("RCRA"), 42 U.S.C. § 6901 et seq., finding that the Commonwealth's underground storage tank program for petroleum and hazardous substances satisfies all of the requirements necessary to qualify for final approval.

180.    Because of EPA's approval, the Commonwealth's underground storage tank program operates in the Commonwealth "in lieu of" the federal underground storage

tank program and the Commonwealth has primary enforcement responsibility with respect to requirements of its program.   42 U.S.C. § 6991c(d) and 63 Fed. Reg. 4589, 4589-90 (Jan. 30, 1998).

181.   The Commonwealth's underground storage tank program has been codified and incorporated by reference into the federal regulations promulgated pursuant to RCRA at 40 C.F.R. § 282.102 and 40 C.F.R. Part 282, Appendix A.   63 Fed. Reg. 4591, 4591-92 (Jan. 30, 1998).

182.   The Owner/Operator Defendants' and Does' unlawful releases of regulated substances, containing MTBE, from underground storage tank system[s] into the waters of the Commonwealth violate Rule 1102(A) and (B) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362, and expressly incorporated into the federal regulations at 40 C.F.R. Part 282, Appendix A.

183.   The Owner/Operator Defendants' and Does' installation, operation, and/or closure of underground storage tank systems without taking all practicable measures to control releases or spills violate Rule 1102(D) of the Puerto Rico Underground Storage Tank Control regulations, set forth in EQB Regulation 4362, and expressly incorporated into the federal regulations at 40 C.F.R. Part 282, Appendix A.

184.   Upon information and belief, the Defendants' facilities located in the Commonwealth and regulated under Subchapter III of RCRA have been managed in such a way so as to be out of compliance with RCRA Subchapter III, causing discharges of hazardous wastes containing MTBE into the environment.

185.   Pursuant to RCRA, the Commonwealth seeks an order enforcing the Puerto Rico Underground Storage Tank Control regulations, which have been expressly

incorporated into the federal regulations at 40 C.F.R. Part 282, Appendix A.   The Commonwealth seeks an order compelling Defendants to investigate and repair and/or properly close all storage tanks, underground and aboveground, which are leaking or pose a significant risk of leaking to ensure they do not leak MTBE or MTBE-containing substances into the Commonwealth's soils, waters, and other natural resources.   The Commonwealth further seeks an order compelling Defendants to investigate, delineate, and remediate all soils, waters, and other natural resources impacted by MTBE originating from leaking underground storage tank systems and Subchapter III regulated facilities within the Commonwealth so as to remove all detectable concentrations of MTBE.

186.   The discharged regulated substances, which include MTBE and substances containing MTBE, constitute "solid wastes" and "hazardous wastes" under RCRA § 1004(27) and (5), 42 U.S.C. § 6903(27) and (5), respectively.

187.   Defendants have contributed to the disposal and storage and/or threatened disposal and storage of such solid and hazardous wastes in the soils, waters, and natural resources of the Commonwealth.

188.   Such disposal and storage and/or threatened disposal and storage threaten human health and/or the environment of the Commonwealth.

189.   Pursuant to RCRA, the Commonwealth seeks an order compelling Defendants to investigate and repair and/or properly close all storage tanks, underground and aboveground, as well as facilities regulated under Subchapter III that are leaking or pose a significant risk of leaking to ensure they do not leak MTBE or MTBE-containing substances into the Commonwealth's soils, waters, and other natural resources.   The

Commonwealth further seeks an order compelling Defendants to investigate, delineate, and remediate all soils, waters, and other natural resources impacted by MTBE originating from leaking underground storage tank systems and/or Subchapter III regulated facilities within the Commonwealth so as to remove all detectable concentrations of MTBE.

## COUNT VII
### (Restitution for Unjust Enrichment)

190.    The Commonwealth re-alleges paragraphs 1 through 189 above, and by this reference incorporates them as though set forth in full.

191.    The Commonwealth asserts a claim for restitution against all Defendants to recover the Defendants' profits gained or avoided costs saved through their wrongful acts as described below.

192.    These funds are sought in order to restore the environment and natural resources impacted by Defendants' MTBE.

193.    Each Defendant has, at all times relevant to this action, allowed MTBE and/or gasoline containing MTBE to enter or threaten to enter the natural resources of the Commonwealth (including its soil and surface and groundwater) as follows.

194.     The Manufacturer/Supplier Defendants manufactured and supplied MTBE to refiners as an oxygenate to meet federally mandated requirements under the 1990 Clean Air Act Amendments ("1990 CAA") for reformulated gasoline in certain highly industrialized and populated cities, towns or municipalities that were rated "severe and above" for ozone.  Because of the requirements of 1990 CAA for these industrialized areas, the Defendants encouraged the use of MTBE as it was a profitable constituent to manufacture and supply.  Despite the fact that the 1990 CAA **did not mandate** the use of an oxygenate in the Commonwealth, the Manufacturer/Supplier Defendants supplied

MTBE and/or failed to track, differentiate, segregate or otherwise prevent the sale of MTBE to be blended into gasoline for sale and distribution in the Commonwealth.  The MTBE was blended into gasoline where it was placed into leaking gasoline handling and delivery systems that allowed the release of MTBE into the subsurface of the Commonwealth.  MTBE was used because it was more profitable to do so despite the risks posed by the MTBE to the environment and public health and welfare.

195.    The Refiner/Supplier Defendants refined, marketed and supplied gasoline containing MTBE in the Commonwealth.  The distribution of gasoline containing MTBE was highly profitable.  Despite the fact that the 1990 CAA **did not mandate** the use of an oxygenate or MTBE in the Commonwealth, the Refiner/Supplier Defendants nevertheless supplied gasoline containing  MTBE and/or failed to track, differentiate, segregate, or otherwise prevent the sale of gasoline containing MTBE in the Commonwealth.  The gasoline containing MTBE was placed into leaking gasoline delivery systems that allowed the release of MTBE into the subsurface of the Commonwealth.  MTBE was used because it was more profitable to do so despite the risks posed by the MTBE to the environment and public health and welfare.

196.    The Owner/Operator Defendants took, received, marketed and sold gasoline containing MTBE in the Commonwealth.  Despite the fact that the 1990 CAA **did not mandate** the use of an oxygenate or MTBE in the Commonwealth, the Owner/Operator Defendants nevertheless received gasoline containing MTBE and/or failed to specify, differentiate, or otherwise prevent the receipt of gasoline containing MTBE in the Commonwealth.  The gasoline containing MTBE was placed into leaking gasoline delivery systems that allowed the release of MTBE into the subsurface.  MTBE was used because it was more profitable to do so despite the risks posed by the MTBE to the environment and public health and welfare.

197.    The Defendants also took delivery of, manufactured, processed, refined, and stored MTBE and gasoline containing MTBE utilizing inadequate handling and delivery systems, including tanks and piping, and did not utilize appropriate equipment or procedures to prevent, contain, detect and clean-up leaks and spills.  MTBE and gasoline containing MTBE was released into the subsurface due to inadequate MTBE and gasoline handling and delivery systems.

198.    By allowing manufacturing, refining, supplying, distributing and/or selling MTBE and/or gasoline containing MTBE, which Defendants knew would be released into the subsurface, the Defendants were unjustly enriched.

199.    The Manufacturer/Supplier Defendants and Refiner/Supplier Defendants supplied MTBE and/or gasoline containing MTBE to the Commonwealth and failed to track, differentiate, segregate, or  otherwise prevent the sale of MTBE and/or gasoline containing MTBE in the Commonwealth because to distinguish the Commonwealth from other markets where an oxygenate was required would be less profitable.

200.    The Defendants were also unjustly enriched in avoiding or deferring capital and operating costs associated with taking appropriate measures to prevent, contain, detect and clean-up leaks and spills.  At least since the mid-1960's Defendants knew that gasoline handling and delivery systems suffer significant widespread leaks and failures, and release products into the environment, including into ground water.   Since that time, industry has recognized practices that would prevent the escape of gasoline from gasoline handling and delivery systems.  However, despite knowing these measures and that the equipment used at refineries, terminals, and retail stations was aging, Defendants deferred these measures, and in some instances have not implemented such measures in the Commonwealth.  Moreover, Defendants failed to warn, train, instruct employees, and contractors as to practices to prevent, contain, detect and clean-up leaks

and spills.  As a consequence, MTBE containing gasoline has escaped the gasoline handling and delivery systems and contaminated the groundwater of the Commonwealth.

201.    The Commonwealth has been impoverished because of the Defendants' acts.  MTBE contamination of the Commonwealth's natural resources is particularly pernicious.  Once in the soil, MTBE spreads farther and faster than other components of gasoline and has contaminated and/or threatens to contaminate the Commonwealth's ground water, including drinking water supplies.  Moreover, MTBE resists biodegradation and is difficult and costly to find and remove from water.

202.    These unique characteristics cause extensive contamination and threaten public health and welfare.   MTBE threatens potentially usable groundwater as a source of public drinking water in the Commonwealth because it changes the taste and odor, making it unfit for human consumption, even at extremely low concentrations.

203.    The impoverishment to the Commonwealth is clearly tied to the enrichment of Defendants.  If Defendants had foregone profit considerations and prevented or refrained from the sale of MTBE or gasoline containing MTBE in the Commonwealth, the waters of the Commonwealth would not be impacted and threatened and no unjust enrichment of Defendants would have occurred.

204.     On the other hand, had Defendants not deferred the costs associated with necessary prevention, containment, detection and clean-up measures, the waters of the Commonwealth would not have been impacted and threatened and no unjust enrichment of Defendants would have occurred.

205.    In contaminating the waters of the Commonwealth, the Defendants were not enriched by a "right fairly exercised."  The Commonwealth did not and would not have acquiesced in, authorized or otherwise granted the Defendants the right to utilize the

waters of the Commonwealth to deposit MTBE and/or MTBE containing gasoline. Rather, the Defendants acted without any justification for their enrichment.

206.    There is no legal precept which precludes the Commonwealth's claim for unjust enrichment; in fact, given the primacy of the interests involved—guarding the natural resources on behalf of its citizens--the Constitution and Civil Code mandate it. Art. VI, Sec. 19 and Sec. 9 of the Constitution of the Commonwealth of Puerto Rico; 31 LPR §7.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, the Commonwealth of Puerto Rico, in its *parens patriae* capacity, its capacity as the owner of the waters of the Commonwealth, in its capacity as the trustee over such waters on behalf of its citizens, and through the Environmental Quality Board, comes before this Court, and respectfully requests this Court to:

A.   Declare that Defendants are jointly and severally liable for the full costs of all investigatory, remedial, removal, and other actions necessary to detect, delineate, abate, remove and remediate MTBE in the waters of the Commonwealth and to restore such waters to their original condition, and for such orders as may be necessary to provide full relief to address risks to the Commonwealth;

B.   Declare that Defendants are jointly and severally liable for the full costs to test all potable wells within the Commonwealth for MTBE and to treat all well water where detections of MTBE are present;

C.   Order Defendants to pay compensatory damages in an amount at least equal to the full cost of restoring the waters of the Commonwealth to their

original condition prior to the contamination of such waters with MTBE, including but not limited to, the costs of:

(1) Testing soils around all underground storage tanks suspected of leaking MTBE or MTBE-containing substances within the Commonwealth;

(2) testing all public and private drinking water supplies in the Commonwealth for the presence of MTBE;

(3) treatment of all waters of the Commonwealth containing detectable levels of MTBE until restored to non-detectable levels and provision of alternate water supplies, where appropriate;

(4) treatment of all well water containing detectable levels of MTBE until restored; and

(5) present and future monitoring of surface and ground waters to detect the presence of MTBE;

D. Order Defendants to pay all other damages sustained by the Commonwealth as a direct and proximate result of defendant's acts and omissions alleged herein, according to proof, including but not limited to remedial, administrative, oversight and legal expenses and compensation for damage to waters of the Commonwealth;

E. Order Defendants to pay Damages to compensate the Commonwealth for injuries to the waters of the Commonwealth, including lost use, lost value, and existence value of such waters harmed by releases of MTBE;

F.   Order Defendants to pay restitution to the Commonwealth based upon the profits they earned by manufacturing, refining, distributing, selling, and discharging MTBE and/or gasoline containing MTBE;

G.   Issue an Order declaring that the Defendants' gasoline delivery systems and/or refineries constitute a nuisance in the manner they are maintained and operated, and compelling them to abate that nuisance;

H.   Issue an Order compelling Defendants and each of them to abate the public nuisance proximately caused by their conduct as alleged herein;

I.   Grant all appropriate injunctive relief to investigate, abate and/or mitigate the MTBE contamination of waters of the Commonwealth;

J.   Order Defendants to pay all costs and reasonable attorneys' fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law;

K.   Reasonable fees for attorneys and expert witnesses pursuant to 15 U.S.C. § 2619 (c)(2);

L.   Issue an Order compelling Defendants to investigate and repair and/or properly close all storage tanks, underground and aboveground, as well as facilities regulated under RCRA Subchapter III that are leaking or pose a significant risk of leaking to ensure they do not leak MTBE or MTBE-containing substances into the Commonwealth's soils, waters, and other natural resources.

M. Issue an Order compelling Defendants to investigate, delineate, and remediate all soils, waters, and other natural resources impacted by MTBE originating from leaking underground storage tank systems and/or RCRA Subchapter III regulated facilities within the Commonwealth so as to remove all detectable concentrations of MTBE; and

N. For such and other further relief as the court may deem just and proper.

PLAINTIFF IS ENTITLED TO A TRIAL BY A JURY AND HEREBY DEMANDS A TRIAL BY A JURY.

Dated:  September 4, 2013

/s Rafael Ortiz Carrión
Rafael Ortiz Carrión, Esquire
Sub-Secretary of Justice
Commonwealth of Puerto Rico

/s
Orlando H. Martinez, Esquire
Orlando H. Martinez Law Offices
Centro de Seguros, Suite 413
701 Ponce de Leon Avenue
San Juan, Puerto Rico  00907

/s John K. Dema
John K. Dema, Esquire
Scott E. Kauff, Esquire
Law Offices of John K. Dema, P.C.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands  00820-5008

/s William J. Jackson
William J. Jackson, Esquire
John D.S. Gilmour, Esquire
Jackson Gilmour & Dobbs, PC
3900 Essex Lane, Suite 700
Houston, Texas 77027

/s Duane C. Miller
Duane C. Miller, Esquire
Michael D. Axline, Esquire
Miller, Axline & Sawyer
1050 Fulton Avenue, Suite 100
Sacramento, California  95825